UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ANDREA NELSON** | : | Case No. 1:20CV00966 |
| 4351 Ridgeview Avenue | : | |
| Cincinnati, Ohio 45238 | : | Judge |
| | : | |
| **Plaintiff,** | : | |
| vs. | : | |
| | : | |
| **MONTGOMERY AT CARECORE LLC** | : | |
| 7777 Cooper Road | : | |
| Montgomery, OH 45242 | : | |
| | : | |
| **Defendant.** | : | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Andrea Nelson, for her Complaint against Defendant, Montgomery at CareCore, LLC ("MCC"), states as follows:

### I. PRELIMINARY STATEMENT

1. This is a civil rights action arising out of Plaintiff Andrea Nelson's employment with MCC. Ms. Nelson alleges that she was a victim of discrimination and retaliation and was terminated because of her race.

2. Ms. Nelson's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Ohio Civil Rights Act.

3. Ms. Nelson seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for both her economic and non-economic injuries. She also seeks punitive damages and equitable relief in the form of reinstatement or front pay, and an award of her reasonable attorney's fees and costs in prosecuting this matter.

## II. JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 to secure protections and redress deprivations of rights conferred by Title VII and 42 U.S.C. § 1981. This Court may assume supplemental jurisdiction over Ms. Nelson's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as her federal claims.

5. Venue with this Court is appropriate because all or part of the claim for relief arose in the Southern District of Ohio.

## III. PARTIES

6. Plaintiff Andrea Nelson is a United States citizen and a resident of Hamilton County, Ohio. Ms. Nelson is African American.

7. Defendant MCC is a domestic limited liability company that provides assisted living services. MCC operates a facility located at 7777 Cooper Road in Montgomery, Ohio. MCC is an "employer" as that term is defined in Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act.

## IV. ADMINISTRATIVE HISTORY

8. On June 10, 2019, Ms. Nelson filed an administrative charge of discrimination and retaliation against MCC with the Equal Employment Opportunity Commission (473-2019-01136). She alleged that MCC discriminated against her because of her race and retaliated against her for protesting race discrimination in the workplace. She then filed an amended charge of discrimination on September 3, 2019. The EEOC issued a Notice of Right to Sue on September 3, 2020. This action is brought within 90 days of receiving the right-to-sue notice.

## V. STATEMENT OF THE CASE

9. MCC hired Ms. Nelson in or about September 2018 as a State Tested Nursing Assistant ("STNA").

10. In early January 2019, a resident at MCC informed Ms. Nelson that a Caucasian nurse, Lori Camp, had been administering the resident Tylenol instead of the resident's opioid pain medication. The resident told Ms. Nelson he believed Ms. Camp was stealing his medication.

11. That same day, Ms. Nelson falsely reported the allegations from the resident to Barb Hucklebee, Director of Nursing.

12. In late January 2019, Ms. Camp falsely reported to MCC's human resources department that, in December, Ms. Nelson flushed a catheter, which was outside of Ms. Nelson's job experience and knowledge. Ms. Camp made this false report in retaliation for Ms. Nelson having reported her for narcotics theft.

13. Rhonda Hamilton, a Caucasian Human Resources Director, confronted Ms. Nelson regarding the accusation. Ms. Nelson vehemently denied flushing the catheter.

14. Nonetheless, Ms. Hamilton, despite having no proof to support the accusation, chose to believe Ms. Camp's suspiciously timed claim and issued Ms. Nelson a final written warning.

15. Following the issuance of the written warning, Ms. Camp and other Caucasian employees made a concerted effort to get Ms. Nelson fired.

16. For example, Ms. Camp called the compliance hotline and complained that Ms. Nelson was verbally abusing her in retaliation for reporting the catheter incident.

17. On another occasion, Ms. Hamilton claimed to have observed Ms. Nelson yelling at Robert Brooks, Housekeeping Manager, over Ms. Nelson's refusal to perform duties outside of her job responsibilities.

18. Additionally, Ms. Camp began instructing residents to make false complaints against Ms. Nelson. On two occasions, residents claimed that Ms. Nelson had made statements regarding Ms. Camp's abuse of opioid pain medication to them.

19. Indeed, one resident who lodged a negative complaint against Ms. Nelson approached her and apologized, claiming that Ms. Camp had offered her a day on her boat if she made a false complaint against Ms. Nelson.

20. After learning this, Ms. Nelson informed Ms. Hucklebee and Shanika Poole, an administrator at MCC, that Ms. Camp was bribing residents to submit false complaints against her.

21. As a result of the false accusations raised against Ms. Nelson, and despite Ms. Nelson informing MCC of the falsity of the allegations, and the substantial evidence that these false allegations were retaliation for reporting narcotics theft, MCC suspended Ms. Nelson in February for a week and placed her on a 30-day performance improvement plan.

22. While Ms. Nelson was serving her suspension, Ms. Camp was arrested at MCC for stealing narcotics from the facility.

23. When Ms. Nelson returned to work from her suspension, MCC reassigned Ms. Nelson to the position of scheduler/driver in the Transportation Department.

24. In the role of scheduler/driver, Ms. Nelson was responsible for scheduling residents' medical appointments and transporting residents to and from those

4

appointments. Ms. Nelson continued to perform STNA duties part-time when the facility was short-staffed.

25. In late March 2019, MCC removed Ms. Nelson from the performance improvement plan, claiming she had adequately met its conditions.

26. On May 9, 2019, Heather Johnson, a Caucasian employee, brought her young son to MCC, which is against company policy.

27. Ms. Nelson and several other nurses were discussing Ms. Johnson's child's presence at the facility. Ms. Johnson overheard this conversation and began yelling at Ms. Nelson, threatening her with physical harm.

28. Following the incident, Gary Blair, a Caucasian and the new Director of Nursing, along with Ms. Hamilton approached Ms. Nelson and told her that she had threatened Ms. Johnson and had to leave the premises. Ms. Johnson remained at work.

29. MCC issued Ms. Nelson a final written warning and suspended her until May 13, 2019 for the incident with Ms. Johnson. Ms. Nelson refused to sign the final written warning.

30. Upon information and belief, Ms. Johnson did not receive any punishment.

31. Upon her return from the suspension, Ms. Nelson noticed that her belongings had been removed from her office and MCC had assigned Ms. Johnson that office.

32. Ms. Nelson immediately requested a meeting with Gary Blair, Beth, a Caucasian administrator, Ms. Hamilton, and Aton, a Caucasian employee in MCC's corporate office, to discuss MCC's decision to remove her from her office.

33. During this meeting, Mr. Blair accused Ms. Nelson of spacing out resident appointments to maximize her ability to obtain overtime. Ms. Nelson told Mr. Blair that her overtime was the result of her part-time work as an STNA due to under-staffing in the

department.  Ms. Nelson also told Mr. Blair that the company was discriminating against her because of her race, and consistently treated Caucasian employees more favorably than African American employees.

34. As a result of the unfounded claims against Ms. Nelson, MCC stripped Ms. Nelson of her scheduling responsibilities, which greatly reduced her work hours.

35. On or about May 17, 2019, Ms. Nelson spoke with Sean, a Caucasian employee in MCC's corporate office.  During this conversation, Ms. Nelson told Sean that MCC was discriminating against her because of her race and that she intended to file an EEOC charge against the company.

36. On May 22, 2019, Mr. Blair met with Ms. Nelson.  During this meeting, Mr. Blair told Ms. Nelson that MCC was terminating her employment because of complaints it had received from residents.  Ms. Nelson denied the characterization of the complaints lodged against her.

37. MCC discriminated against Ms. Nelson intentionally, maliciously, and/or purposefully with a conscious and deliberate disregard for Ms. Nelson's rights under federal and state civil rights laws to be free from acts of discrimination in employment on account of race and retaliation for protesting acts of discrimination in the workplace.

38. As a direct and proximate result of MCC's actions, Ms. Nelson has suffered and will continue to suffer damages from lost income and benefits, emotional distress, and damage to her professional reputation.

## VI. STATEMENT OF CLAIMS

### Count 1: Race Discrimination
### 42 U.S.C. § 2000e, 42 U.S.C. § 1981, & Ohio Rev. Code § 4112

39. Plaintiff incorporates paragraphs 1 through 38 as if fully rewritten herein.

40. Ms. Nelson is African American.

41. Defendant terminated Ms. Nelson for raising complaints of race discrimination.

42. Ms. Nelson was qualified for the position of STNA and scheduler/driver.

43. Ms. Nelson was treated less favorably than her white coworkers.

44. As a result of the Defendant's actions, Ms. Nelson suffered damages, including lost wages and emotional distress.

## Count 2: Retaliation
## 42 U.S.C. § 2000e, 42 U.S.C. § 1981, & Ohio Rev. Code § 4112

45. Plaintiff incorporates paragraphs 1 through 44 as if fully rewritten herein.

46. Ms. Nelson engaged in activity protected by Title VII when she opposed race discrimination in the workplace and when she informed the company that she intended to file a charge of discrimination with the EEOC.

47. MCC was aware of Ms. Nelson's protected activity.

48. MCC took adverse action against Ms. Nelson after she complained of a racially-hostile working environment, ignoring her complaints, and subsequently terminating her.

49. There is a causal connection between Ms. Nelson's complaints of racial discrimination and the adverse action MCC took against her.

50. MCC's stated reasons for terminating Ms. Nelson are pretext for illegal retaliation.

51. As a result of MCC's actions, Ms. Nelson suffered damages, including lost wages and emotional distress.

## Count 3: Hostile Work Environment
## 42 U.S.C. § 2000e & Ohio Rev. Code § 4112

52. Plaintiff incorporates paragraphs 1 through 51 as if fully rewritten herein.

53. Ms. Nelson is African American.

54. Ms. Nelson was subject to unwelcome harassment on the basis of her race.

55. The harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

56. MCC knew or should have known about the harassment and failed to act.

57. As a result of MCC's actions, Ms. Nelson suffered damages, including lost wages and emotional distress.

## **PRAYER FOR RELIEF**

Wherefore, Ms. Nelson demands judgment against MCC as follows:

1. An award of compensatory damages for all economic damages suffered by Ms. Nelson in an amount to be determined at trial;

2. An award of compensatory damages for all non-economic damages suffered by Ms. Nelson in an amount to be determined at trial;

3. For an order reinstating Ms. Nelson to her previous position at MCC, inclusive of all pay increases and benefits to which she would have been entitled had she not been terminated, or in the alternative, an award of front pay;

4. For an award of punitive damages in an amount to be determined at trial;

5. For an award of Ms. Nelson's reasonable attorney fees and costs;

6. For an award of any other relief in law or equity to which Ms. Nelson is entitled under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)
Daniel J. Treadaway (OH No. 0098000)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
bbutler@mezibov.com
dtreadaway@mezibov.com

*Attorneys for Plaintiff Andrea Nelson*

## JURY DEMAND

Plaintiff Andrea Nelson demands a jury trial to resolve all issues of fact related to her Complaint.

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)